Page number 18-1250 National Treasury Employees Union Petitioner v. Federal Labor Relations Authority Mr. Cha, the petitioner, Ms. Macko, the respondent Good morning, and may it please the Court. Boris Cha for the National Treasury Employees Union NTU's contract proposal, which CBP has agreed to implement if it is found to be negotiable, relates to fairly compensating employees for official travel. Mr. Cha, the FLRA's ruling below that our proposal conflicts with the Federal Travel Regulation is wrong for three reasons. The FLRA's primary complaint is that an official station under our proposal would not create a definite domain, a term which it defined below to mean a definite area. But we have shown that our proposal would create a definite domain consisting of the area encompassed within 50 road miles in every direction from an employee's official duty station, which, in other words, is where the employee normally reports to work. The agency would select the most expeditious routes possible for official travel, and official stations would be measured using those very routes. These official stations would be uniform for all employees, and they would not vary per trip, as the FLRA concluded below. How does that work, by the way? So if I take, say, a 60-mile trip and submit expenses for the last 10, right? What – and suppose I visit my sister on the way. What is – what do I show? How do I – does the – explain to me how it works. Your Honor, if you are engaging in official travel for work, you will go from point A to point B without deviating along the way to visit your sister. But suppose I do? I think in that case there would be many issues. That simply wouldn't be permissible. But how does the agency – I'm just asking how it works. Sure. That's all. I mean, the regulation says the most expeditious route possible, right? Yes, Your Honor, and the agency at the outset would determine that particular route for your official travel and would expect you to – So if I'm going to go on – if I need to go on a business trip, I submit my route ahead of time, and the agency approves it. Is that the way it works? Your Honor, the official station would be determined at the outset for any particular official duty station. So, for example, an airport or a port of entry. The places to which employees would travel for work would be known to the agency. And it would determine, you know, if you're going from JFK to LaGuardia or from JFK – That's a set amount of miles. It's just – that's how much you get, right? Yes. Right. Once you know the destination, then somebody has a formula for figuring out how many miles away that destination is. Precisely. For road runs. Yes, yes, that information is readily discernible. And that's not that you're doubtful in the authorities' words below. Well, Mr. Shaw, how exactly is that done now? How is that determination made? Currently? If something is or is not within the 50-mile radius. Your Honor, the agency would determine measuring 50 road miles out in every direction from, for example, the airport. All right, that creates a circle around the origin. Yes. And so if you go outside of that area, you've traveled outside of the official station. But I don't think it does create – That's not the way it works. I don't think it does create a circle, right? Because if you go by – first of all, road miles is not being used now, as I understand it. Right. But if you got to the point where this was negotiable and road miles were being used, then I don't think it would be a circle. Because the whole point of using road miles is that a circle is too big. And so it would be a bunch of – it would be just a whole smattering of endpoints. Your Honor, it would not be a circle. It would be an area of varying shapes. But I had asked you how it's done now. So are you saying it is not done now by drawing a radius? It is, Your Honor, done – And this would change? This would be a change, yes. But under the present practice, if I go out to a farm in Virginia, what determines whether it's within that 50-mile radius? Put a protractor on a map? I mean, how does it work? Your Honor, it is straight mileage radius. It is a straight line on a map. And when you give us – How do you determine that? If I go and look on Google, it's going to give me road miles. Your Honor, I am not sure in practical terms how it works currently. And there's – that's not in the record in terms of how you do determine when you exceed that mileage radius. Well, the authority has argued that if they switch to your proposal, that it will create uncertainty and disputes about whether the trip was or was not exceeded the 50 miles as you calculate. And even now, I don't understand how it's determined. You don't seem to know, and you don't know how it would be done under your proposal either, then. Your Honor, under our proposal, I think we do know how it would be done. It would be done using a map application like Google Maps. You would be able to determine 50 driving miles out from the particular official duty station. That is how it would work, which may, in fact, be easier to determine than using mileage radius on a map. So would there have to be an agreement as well that we're going to use a particular mapping service? I'm sorry. Would the parties have to agree on a particular mapping service as well? They differ, you know. Is Your Honor referring to map applications like Google Maps versus a different – Yeah, Google Maps and Apple Maps will give you different results for a place that I visited this summer, different by about three-quarters of a mile. Your Honor, our view is, and there's no dispute about this, is the agency selects the route. I think implicit in that is that it would select the map application to use to determine that route. Okay. They pre-select the route. I'm sorry? They pre-select the route. Correct. That's correct, Your Honor. Let me ask you a different kind of question. Okay. So did anybody at any time in this case ask – GSA wrote this regulation, right? That's correct, Your Honor. Did anybody ever ask GSA what – or any other definite domain means? No. Well, then you're asking us to interpret this, right? You're asking us to rule that any other domestic domain includes your driving route theory, right? That's correct, Your Honor. But how do we know that? GSA is authorized. It wrote the regulation. Its view about that would receive deference from this court, correct? Yes. So how can we – and if we interpret it one way, I guess GSA could always correct that? Is that your – suppose we think you're right and in another case GSA is involved and they say, no, no, no. What we meant was as the crow flies. Then what? Well, Your Honor, to begin, Your Honor is absolutely right. This is a question of first impression. This term, any other definite domain, has not been interpreted by a court or an administrative body, not by the GSA. Yeah, but it hasn't been interpreted by the key agency that's authorized to interpret it. Correct. Maybe GSA, right? Maybe we should get their views. Well, Your Honor, our view is this question is properly before this court. If at some later date the GSA appropriately gives its view on the meaning of this regulation, this court can certainly take that into account. We can do what? You can certainly take its view into account should it give it. I mean, I think it would be up to the government to – if the government wanted to benefit from deference to the GSA, then the government could have brought in the GSA to get deference. But the government didn't do that. And so from your perspective, all you're faced with is the result of an adjudication and you're trying to get it overturned in our court. Yes. I mean, that is – the government has not offered GSA's view. The GSA has not intervened in this action. All those options were on the table. None were – none of those routes were taken by the government. Can I ask you about your proposal to the road miles? Just a couple of practical questions. So what happens if there's a place that isn't on the road? How would it work in practice? So there must be locations that government workers go to that aren't accessible by road because – I assume that there are areas that are just off-road. Right. I don't know in practical terms if this proposal would have an effect there. I mean, this is a common-sense proposal that is intended to fairly competent employees who are driving long distances. You know, somebody who drives from a port in Idaho to a port in Washington, as described in our brief, who might drive 168 miles. Yeah, I totally get the – I think sensibility of taking into account a zigzag route and not treating somebody who drives 180 miles by zigzag as if they've driven 10 because as the crow flies it would be 10. I understand that, but I just don't – I wasn't quite comprehending what happens under a road mile proposal with destinations that are not accessible by road. Yes, I mean, if you have a CDP employee who, you know, has to hike 20 miles along the border, not on a road, then there could be presumably some sort of compensation related to that work. I don't think – our proposal doesn't have an effect on, I guess, that individual in that circumstance. So for that person, it would at least take into account the last road stop they had, and then if they have to get out and go by foot, then it's just not within the scope of this case is basically what you're saying. Well, so our proposal does create areas, and so that would be – it could be that, you know, it's not just that you step off the roadway and our proposal has no effect on you. But I – So on the question of whether your proposal creates areas, so I can see one way in which it does, but I can see one way in which it doesn't, because if you have a series of endpoints – let's just simplify the scenario. I mean, I don't have a chalkboard, but just let's do a virtual one. So if you have just three endpoints, then, yeah, you could have a road map that takes you to each of the three endpoints, but nothing tells you what you do to connect those endpoints. So in theory, you could say, all right, well, you take a straight line between each of the endpoints and you create a triangle. You could take a curve, and you would create something that looks maybe a little more like a circle depending on where the endpoints are. But in order to create an area, it doesn't seem like a bunch of endpoints obviously creates an area in the sense that you just create a parameter around the endpoints. Your Honor, if you have those three endpoints, you would – so let's picture three roads, three endpoints, all connecting back to the official station, the airport. The area encompassed between the, say, the first and third roads, the outer two roads. The area within going back to the airport, that is the area. That would be the official station. And importantly, I just want to underscore – So the area would be the three spokes. Exactly, Your Honor. We're not even talking about the parameter. We're just talking about each of the spokes as being an area, and then the accumulation of the three spokes becomes the total area. The area encompassed within those spokes. And importantly, there is no dispute, there's no dispute in the record below about the meaning and operation of our proposal, which has a singular function, drawing up an official station. So I know it's confusing to conceptualize and to speak about here, but there's – and on appeal, most of the authorities' arguments are uncertainty-based arguments. We don't know how it would work, what would it look like. That is irreconcilable with the record below, which says in several places at J41, which is the party's post-petition conference, in the authority's decision itself, no dispute over the meaning and operation of Enzi's proposal. Thank you. Thank you. Thank you. Good morning. May it please the court. My name is Tabitha Macco. On behalf of Noah Peters and Rebecca Osborne, we represent the authority, the respondent in this matter. There was one very narrow question before this court, and that was whether the authority reasonably concluded that a collective bargaining proposal requiring the agency here, Customs and Border Protection, to calculate bargaining unit employees' travel compensation by measuring 50 road miles from their official duty station in every direction is non-negotiable, because it's contrary to the regulation, 41 CFR 300-3, of the federal travel rights. Under the labor statute, the Federal Service Labor Management Relations statute,  federal agencies have no duty to negotiate over proposals that are inconsistent with any federal law or regulation, because the authority found 50 road miles from an employee's official duty station in every direction was inconsistent with this regulation. The authority found the proposal to be non-negotiable. Okay. So would you look? Their reasoning is basically one sentence, correct? It says, it is not a definite area, common, and could extend more than 50 miles from where the employee regularly performs his service, or vary with every employee. Right? That's it. That's it. Isn't that right? That sentence from the FLRA decision? Our reading of the plain wording, yes. Yeah. That's it. Okay. So, first of all, the second clause,  how is that possible? Your Honor, that phrase, the petitioner's brief made much about that phrase. Well, forget what they said. I'm asking you how that makes any sense. If it's 50 road miles, then it will either be less than 50 miles, or if it's an actual straight road, it will be 50 miles. But how could it exceed 50 miles? That is the point of the proposal, Your Honor, is that we don't know where it would go. We don't know what? We don't know where this road would go. No, but we do know that it couldn't extend more than 50 miles. We do know that. It can't extend more than 50 miles, right? No way. Your Honor, We can't do that. I mean, I suppose if you went at the speed of light. Well, it depends on the space time. Because everything's relative. Yes, Your Honor. The space time continuum is always there. Yeah, but we're not dealing with that here. There could be some varieties, but. So, but how can it extend more than 50 miles? It doesn't give an area, which is what the authority focused on. It's not what the authority focused on. It said three things. It's not a definite area, and two other things. Right. And I think what Judge Tatel is pointing out is at least one of those things, and I have some questions about the third one, too, but. Me, too. At least one of those things seems wrong. And if we know that there's three things. The first one is just a statement. It's not a definite area, without an explanation of why it's not a definite area. I know you have a theory about that. But then the second one says, could extend more than 50 miles. And if we think that just as a matter of basic geometry, it can't be more than 50 miles. I mean, I grew up in Kansas, and I-70 is basically a straight line. I know one thing is when you go 50 miles on I-70, you're going 50 miles, but you're not going more than 50 miles. But that's what this sentence seems to say, is that even if it's a straight line, it could go more than 50 miles. I just don't understand that as a matter of basic geometry. And so if we think that can't be done, then at least one of the pillars of the rationale is wrong. But the authority interpreted the entire regulation. In the entire paragraph, as succinct as it is, the authority was looking at the way that this regulation could be interpreted and what it provides for. And the regulation provides for an area, it provides for a shape. The authority's interpretation of another agency's reg is reasonable, and it's sound. But we don't-that's not the standard here, right? Because the FLRA is not entitled to interpret this regulation. Is it? Only GSA can interpret the regulation. So we're doing this essentially de novo, aren't we? Yeah, no question, Your Honor. Okay, so the question isn't reasonableness. The question is whether the agency has, in our view, looking at nothing but the language of the regulation, interpreted it according to its plain language. And as Judge Sridharvasan pointed out, there's also a second clause here, or vary with every employee and every trip. And I don't see how that's accurate either. The regulations, the statutes, require that employees travel the most expeditious route possible. And we don't travel a whole lot. But when we do, like, for example, when we go to a judicial conference, we either get our-if we take a bus, we get our bus fare. Or if we drive, they say, you will be reimbursed for 182 miles. And we all get the same thing. So I don't see-and I assume all agencies. I haven't worked in the executive branch for a long time. But that's how I recall it worked then also. So even the second pillar isn't accurate. Your Honor, the authority, when it reviews a negotiability petition, reviews regulations that are drafted by other agencies all the time. OPM issues regulations and the authority has to interpret them. Here, GSA issued this government-wide regulation. So this is something that the authority has to do. Oh, no, I totally get that. The FLRA has to interpret. I'm deeply curious as to why someone who has to interpret it didn't ask the writing agency what it means. But that's not part of this case. I just want to know why you think this sentence is not inaccurate, varying with every employee and every trip. Because, Your Honor- How will that be possible? As the proposal is written, not as interpreted now, but as the proposal is written and presented to the authority, it's 50 road miles. Yeah. So that when the odometer rolls over 50, it's met. Well, but as the union points out, this is all within the context of the government's travel regulations, which require travel by the most expeditious route possible. Yes, it does, sir. As well as Section 300-3.1, which requires an area. The Federal Travel Reg defines an official statement, and that has to be official station as an area, and that has to be incorporated as well. Nowhere in the materials below the agency's and the union's filings for this negotiability petition, when it went to the members, did the agency ever concede that it had the role or it had the job or accepted the responsibility to define and pick out a road, pick out a map, pick out a particular route. The proposal as it's written, as it was submitted by the union, is just 50 road miles. But don't we read that in the context of all other existing regulations? The authority was interpreting this one, Rick. An employee under this, let's assume that the union's proposal was in place. An employee under existing regulations could not get reimbursed for a 50, a trip that was by the most expeditious route possible, 50 miles, could not get reimbursed for 75 because the employee visited his sister on the way. Right? They couldn't do that under the regulations. Correct? I would presume so, sir, but that's how an employee gets paid was not the question in front of the authority here. The question in front of the authority was the very narrow one, which is whether this particular proposal was narrow. I'm not sure I understand the third pillar either. So there's three pillars. It's not a definite area, could extend more than 50 miles, we think. Let's just, I know you may disagree, but let's just assume that one's wrong. Or vary with every employee on every trip. Let's assume that one's wrong too. Then that leaves it's not a definite area. I'm not sure I understand why it's not a definite area either because it's the definite area that includes all the spokes. But the regulation requires a shape and a place. It doesn't say anything about a shape and a place. It just says it has to be a definite domain. And I don't understand, which I take it is synonymous with definite area. And if it's a definite domain, meaning definite area, I'm not sure I understand why it's not a definite area to say what area are you talking about. Well, I'm talking about the area that includes the spokes. But that's not what the regulation wanted. And that's not the way the authority interpreted the plain term. We don't know how the authority interpreted the regulation because all it said is it's not a definite area. That's it. I think I'm reading every single word that speaks to whether it's a definite area. And the words are it's not a definite area. It doesn't say why it's not a definite area. It just says it's not a definite area. And I don't understand why it's not a definite area if the answer is it is a definite area. It's the definite area that includes the spokes. But that would depend on how each and every individual employee happened to travel. No, it doesn't. It doesn't depend on how each. Because let's suppose the proposal said, and it's just a proposal, and all we're talking about is whether it's negotiable. We're not talking about how the negotiation is going to come out. Let's suppose the proposal said and should be understood to mean that road miles is determined by Google Maps. The routes are determined by Google Maps. I know there's some issues about do people have access to Google Maps. I get all that. But let's just assume that there's some common metric for determining what road miles are, and let's just say that's Google Maps. And at that point, it's not true that they vary with every employee and every trip. Because all you need to know is give me point A, give me point B, then I'm going to tell you the road miles for everybody. I need to go from point A to point B. You need to go from point A to point B. The two other judges need to go from point A to point B. We all have the exact same mileage readout on that. It doesn't vary. But that's not what the regulation provides. The issue before the authority is not how to get people paid or how to get compensation, but whether the individual proposal met up with the regulation. Right, and the words of the regulation that matter is whether it's a definite domain. And I don't understand why it's not a definite domain when you know that it's the domain that encompasses the spokes. Because the proposal allows the employee to define depending on 50 road miles, and that sort of subjectivity is not reflected in this regulation. The regulation provides an area. And it's not definite. Maybe I'm asking the question in a way that's not apparent, but I don't understand why it's not definite. I don't understand why it allows for variation because we're assuming that there's a way to figure out road mileage. And once we do that, the definite area is the area encompassed by those road trips. It just tells you from point A to point B, the road mileage is encompassed by the following route. Once we know that, that's the area. It's definite. It's completely definite. It's not subject to any subjectivity. It's completely objective. The authority interpreted the regulation differently, Your Honor, than that. The authority read all the words that required the area, which is the name. That would be a great argument if you were representing GSA. Ms. Macco, a few years ago we had a case here in which the issue was whether a switching carrier in a train hub in New England was a carrier by rail under the Interstate Commerce Act. And the Railroad Retirement Board said it was, and the employer was obligated to contribute to the Railroad Retirement Fund. The district court ruled on the merits of that case that came up here, and we looked at it and said the Railroad Retirement Board's interpretation of a provision in the Interstate Commerce Act is not authoritative, unlike the interpretation of the Surface Transportation Board. And so invoking the doctrine of primary jurisdiction, we held the case for the appellate to go get an opinion from the STV, and then went through that proceeding and came back with that opinion, and that enabled the court to resolve the case. Why isn't that something we might do here as well? Your Honor, I can only speak to our statute, and our labor statute does provide us to send requests to OPM to ask for a question under Title V for OPM's interpretation for one of its regs. I'm not aware of how the statute would allow the authority to make that inquiry. If this court finds that the authority has erred, we ask that the case be remanded to us because the agency did make other objections. In the case to which I'm referring, we did not ask the Railroad Retirement Board to go get an opinion. We told the petitioner to, if it wanted to, leave here and face the STV. So it would not be the wrong government agency's responsibility to do that. The doctrine of primary jurisdiction is well established in three or four Supreme Court cases, but there hasn't been one since probably the 50s, and it's not taught much in administrative law anymore, but it's there. We leave this case in the sound hands of this Court. No, but I think you raised a good, you raised an interesting point in response to that. So from your perspective, suppose that there is an option to direct an inquiry to GSA in some fashion, whether it's primary jurisdiction or something else, but you, as you rightly say, you have other arguments as to why you think this is non-negotiable. Yes, Your Honor. What does the government prefer? Would it rather have the opportunity just to address those other arguments in a remand,  We would rather have the case back to us. You don't have it back to you? To consider all the arguments that we consider. Okay, thank you. And was Mr. Shaw out of time? Okay, you can take a minute. Thank you, Your Honor. This Court's charge is to consider the FLRA's rationale below, and as this Court has identified today, that rationale consists of a single sentence within this Court's words, three pillars, none of which is supportable. All three pillars fail. The area, the definite area created by our proposal is the area that was indicated just a few minutes ago by the Court. It is the quote-unquote area within the spokes. That's what we're talking about. And it can be readily determined using the map application of the agency's choice. It wouldn't vary by employee. It wouldn't vary by trip. And it can never be more than 50 miles. Well, under that theory, I mean, we don't, going back to the question that both of my colleagues just asked about who gets authority to interpret this, if, in fact, all this sentence has three errors in it, we don't really have to interpret the regulation, do we? We can just say this interpretation rests on three false, three inaccuracies, and therefore just send it back to the agency. And if the agency wants to ask you to say what it is, it could. Otherwise, it could try again, I suppose. But we don't, that avoids the need for us to interpret a regulation that the primary agency hasn't interpreted. Your Honor is correct. There's no need for this court to, in the first instance, assess the federal proper regulation because the FLRA space is below or so plainly deficient. That would be the limit of this court's ruling. Okay. Thank you. Case is submitted.
judges: Tatel, Srinivasan, Ginsburg